## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ILLINOIS

IN RE:

|  |  |
|---|---|
| ELIZABETH A. PFLEGER FKA ELIZABETH ANN BOYCE | Case No. 12-32305 |
| Debtor(s), | Chapter 13 |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS INDENTURE TRUSTEE FOR ARLP SECURITIZATION TRUST, SERIES 2015-1 | Judge Laura K. Grandy |
| Movant, |  |
| ELIZABETH A. PFLEGER A/K/A E. ANNE BOYCE A/K/A E. ANNE PFLEGER, RUSSELL C. SIMON, CHAPTER 13 TRUSTEE, |  |
| Respondents. |  |

---

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

---

   **NOW COMES** Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not In Its Individual Capacity But Solely As Indenture Trustee For ARLP Securitization Trust, Series 2015-1 (hereinafter "Movant"), by and through its attorneys, CODILIS & ASSOCIATES, P.C. and moves this Honorable Court pursuant to 11 U.S.C. §362(d)  for an Order granting Creditor relief from the automatic stay  with respect to certain real property of the Debtor(s) having an address of 3500 Coronado Drive, Alton, IL 62002 (the "Property").  In further support of this motion, Movant respectfully states:

   1.    This Court has jurisdiction pursuant to 28 U.S.C. §1334 and venue is fixed in this Court pursuant to 28 U.S.C. §1409;

2.    Debtor filed a petition under Chapter 13 of Title 11, United States Bankruptcy Code on 12/14/12;

3.    The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory Note executed on 2/22/2008 (see attached exhibits). The Movant is an entity entitled to enforce the Note;

4.    Pursuant to that certain Mortgage, recorded with the Office of the Recorder of Deeds of Madison County Illinois as Document No. 2008R09269, all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the Property (see attached exhibits);

5.    Enforcement of this security interest has been stayed automatically by operation of 11 U.S.C. §362 of the Bankruptcy Code;

6.    On information and belief, the following persons may have an interest in the subject property:  Elizabeth A. Pfleger a/k/a E. Anne Boyce a/k/a E. Anne Pfleger;

7.    As of 2/6/2016, the estimated amount currently due Movant on account of said note and mortgage is $82,982.43 and includes:

| | |
|---|---|
| Unpaid Principal Balance | $64,972.58 |
| Accrued Interest from 11/1/12 to 2/6/16 | $12,465.84 |
| Escrow Advance | $6,291.32 |
| Suspense Balance | ($747.31) |
| Recoverable Balance | |

8.    On information and belief, the approximate value of real estate is $50,000.00, per Debtor's Schedules;

9.    The Debtor(s) plan calls for the Debtor(s) to surrender the property located at 3500 Coronado Drive, Alton, IL 62002;

10.   Movant is entitled to relief from the automatic stay under 11 U.S.C. §362(d) for the following reasons:

    a)     Movant's interest in the Property is not adequately protected;

    b)     As of 2/6/2016, the Debtor(s) is/are past due for the 2/1/14, and all amounts coming due since that date.  Any payments received after this date may not be reflected in this default;

    c)     As of 2/6/2016, the total post-petition default through and including 2/1/16, is $15,463.73, which includes a suspense credit of $581.49.  Any payments received after this date may not be reflected in this default.  This amount includes post-petition attorney fees in the amount of $826.00;

    d)     Debtor's plan calls for debtor to surrender property located at 3500 Coronado Drive, Alton, IL 62002;

    e)     On 3/1/2016, the default will continue to increase as additional amounts become due;

    f)     Pursuant to 11 U.S.C. §362(d)(2)(A), Debtor(s) has no equity in the property; and pursuant to §362(d)(2)(B), the Property is not necessary for an effective reorganization;

11.   The Court has authority to order that Rule 4001(a)(3) is not applicable to the order entered in granting this motion, and Creditor requests this Court so order;

12.   That in the event the stay is modified, Movant requests this Court find that Rule 3002.1 is not applicable with respect to Movant as the loan secured by the property described herein will not be paid pursuant to 11 U.S.C. 1322(b)(5);

**WHEREFORE,** Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not In Its Individual Capacity But Solely As Indenture Trustee For ARLP Securitization Trust, Series 2015-1 its principals, agents, successors and/or assigns prays this Court enter an Order pursuant to 11 U.S.C. §362(d)  modifying the automatic stay  of this proceeding, allowing the fees and costs described herein to be added to the indebtedness pursuant to the terms of the note and mortgage, and for such other and further relief as this Court may deem just and proper.

Dated this February 9, 2016.

Respectfully Submitted,

CODILIS & ASSOCIATES, P.C.

By: /s/ MaryAnn Kier

Berton J. Maley ARDC#6209399
Rachael A. Stokas ARDC#6276349
Gloria C. Tsotsos ARDC#6274279
Jose G. Moreno ARDC#6229900
Peter C. Bastianen ARDC#6244346
Joel P. Fonferko ARDC#6276490
MaryAnn G. Kier #59899MO
**CODILIS & ASSOCIATES, P.C.**
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
**C&A File No. 14-13-27567**

NOTE: This law firm is a debt collector.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ILLINOIS

IN RE:

    ELIZABETH A. PFLEGER FKA
ELIZABETH ANN BOYCE

Case No.  12-32305

                   Debtor(s),

Chapter 13

WILMINGTON SAVINGS FUND SOCIETY,
FSB, D/B/A CHRISTIANA TRUST, NOT IN
ITS INDIVIDUAL CAPACITY BUT
SOLELY AS INDENTURE TRUSTEE FOR
ARLP SECURITIZATION TRUST, SERIES
2015-1

Judge Laura K. Grandy

                   Movant,

ELIZABETH A. PFLEGER A/K/A E. ANNE
BOYCE A/K/A E. ANNE PFLEGER,
RUSSELL C. SIMON, CHAPTER 13
TRUSTEE,

                   Respondents.

## STATEMENT OF PARTIES THAT MAY HAVE
## AN INTEREST IN THE SUBJECT PROPERTY

On information and belief, the following persons may have an interest in the subject property:

Elizabeth A. Pfleger a/k/a E. Anne Boyce a/k/a E. Anne Pfleger
Russell C. Simon, Chapter 13 Trustee

Dated this February 9, 2016

                   /s/ MaryAnn Kier
                   Attorney for Creditor

Berton J. Maley ARDC#6209399
Rachael A. Stokas ARDC#6276349
Gloria C. Tsotsos ARDC#6274279
Jose G. Moreno ARDC#6229900
Peter C. Bastianen ARDC#6244346
Joel P. Fonferko ARDC#6276490
MaryAnn G. Kier #59899MO
CODILIS & ASSOCIATES, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300 **C&A FILE NO. (14-13-27567)**

NOTE: This law firm is a debt collector.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ILLINOIS

**IN RE:**

|  |  |
|---|---|
| ELIZABETH A. PFLEGER FKA ELIZABETH ANN BOYCE | Case No.  12-32305 |
| Debtor(s), | Chapter 13 |
| | Judge Laura K. Grandy |

WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS INDENTURE TRUSTEE FOR ARLP SECURITIZATION TRUST, SERIES 2015-1

Movant,

ELIZABETH A. PFLEGER A/K/A E. ANNE BOYCE A/K/A E. ANNE PFLEGER, RUSSELL C. SIMON, CHAPTER 13 TRUSTEE,

Respondents.

## **PAY HISTORY**

**\*\*PLEASE SEE ATTACHED PAYMENT LEDGER**
Please note that recent payments applied may not have cleared.
Please note that payments received from the trustee for pre-petition arrearages are not included.

NOTE: This law firm is a debt collector.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ILLINOIS

IN RE:

ELIZABETH A. PFLEGER FKA
ELIZABETH ANN BOYCE

Debtor(s),

WILMINGTON SAVINGS FUND SOCIETY,
FSB, D/B/A CHRISTIANA TRUST, NOT IN
ITS INDIVIDUAL CAPACITY BUT
SOLELY AS INDENTURE TRUSTEE FOR
ARLP SECURITIZATION TRUST, SERIES
2015-1

Movant,

ELIZABETH A. PFLEGER A/K/A E. ANNE
BOYCE A/K/A E. ANNE PFLEGER,
RUSSELL C. SIMON, CHAPTER 13
TRUSTEE,

Respondents.

Case No.  12-32305

Chapter 13

Judge Laura K. Grandy

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that I have served a copy of this Notice along with the attached Motion upon the parties listed below, as to the Trustee and Debtor's attorney via electronic notice on February 9, 2016 and as to the debtor by causing same to be mailed in a properly addressed envelope, postage prepaid, from 7140 Monroe Street, Willowbrook, IL 60527 before the hour of 5:00 PM on February 9, 2016.

Russell C. Simon, Chapter 13 Trustee, 24 Bronze Pointe, Swansea, IL 62226 by electronic notice through ECF
Elizabeth A. Pfleger fka Elizabeth Ann Boyce, Debtor(s), 3500 Coronado Drive, Alton, IL 62002
Shari Lynn Murphy, Attorney for Debtor(s), PO Box 136, Wood River, IL 62095 by electronic notice through ECF
Office of U.S. Trustee, Becker Building, Room 1100, 401 Main, Peoria, IL 61602 by electronic notice through ECF

/s/ MaryAnn Kier
Attorney for Creditor

Berton J. Maley ARDC#6209399
Rachael A. Stokas ARDC#6276349
Gloria C. Tsotsos ARDC#6274279
Jose G. Moreno ARDC#6229900
Peter C. Bastianen ARDC#6244346
Joel P. Fonferko ARDC#6276490
MaryAnn G. Kier #59899MO
CODILIS & ASSOCIATES, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300 **C&A FILE NO. (14-13-27567)**
NOTE: This law firm is a debt collector.



| | | |
|---|---|---|
| Contractual due date: | 12/1/2012 |
| Post-petition due date: | 2/1/2014 |
| BK filing date | 12/14/2012 |
| Account Number | ▓▓▓ |

## Post-Petition Payment Change's

| | Effective | Amt |
|---|---|---|
| 1 | 1/1/2013 | $ 612.91 |
| 2 | 8/1/2015 | $ 598.12 |
| 3 | | |
| 4 | | $ - |
| 5 | | $ - |

### Fay Servicing MFR Figures

Post Petition Funds Received since bk filing — **DEFAULT FIGURES**

| Date Rcvd | Amt Rcvd | Amt Due | Pmt Satisfied | Suspense | PMT DUE | | AMT DUE |
|---|---|---|---|---|---|---|---|
| 03/11/13 | 1,106.10 | 612.91 | 01/01/13 | $493.19 | Feb-14 | $ | 612.91 |
| 06/12/13 | 0.00 | 612.91 | 04/01/13 | ($119.72) | Mar-14 | $ | 612.91 |
| 06/12/13 | 0.00 | 612.91 | 03/01/13 | ($732.63) | Apr-14 | $ | 612.91 |
| 06/12/13 | 1,958.45 | 612.91 | 02/01/13 | $612.91 | May-14 | $ | 612.91 |
| 07/09/13 | 612.91 | 612.91 | 05/01/13 | $612.91 | Jun-14 | $ | 612.91 |
| 08/08/13 | 612.91 | 612.91 | 06/01/13 | $612.91 | Jul-14 | $ | 612.91 |
| 08/10/13 | 612.91 | 612.91 | 07/01/13 | $612.91 | Aug-14 | $ | 612.91 |
| 09/24/13 | 0.00 | 612.91 | 09/01/13 | $0.00 | Sep-14 | $ | 612.91 |
| 09/24/13 | 0.00 | 612.91 | 08/01/13 | ($612.91) | Oct-14 | $ | 612.91 |
| 10/24/13 | 612.91 | 612.91 | 10/01/13 | ($612.91) | Nov-14 | $ | 612.91 |
| 02/06/14 | 612.91 | 0.00 | | $0.00 | Dec-14 | $ | 612.91 |
| 02/06/14 | 612.91 | 612.91 | 11/01/13 | $0.00 | Jan-15 | $ | 612.91 |
| 08/05/14 | 152.79 | 0.00 | | $152.79 | Feb-15 | $ | 612.91 |
| 10/07/14 | 612.29 | 612.91 | 12/01/13 | $152.17 | Mar-15 | $ | 612.91 |
| 10/07/14 | 666.13 | 612.91 | 01/01/14 | $205.39 | Apr-15 | $ | 612.91 |
| 11/04/14 | 376.10 | 0.00 | | $581.49 | May-15 | $ | 612.91 |
| | | | | $581.49 | Jun-15 | $ | 612.91 |
| | | | | $581.49 | Jul-15 | $ | 612.91 |
| | | | | $581.49 | Aug-15 | $ | 598.12 |
| | | | | $581.49 | Sep-15 | $ | 598.12 |
| | | | | $581.49 | Oct-15 | $ | 598.12 |
| | | | | $581.49 | Nov-15 | $ | 598.12 |
| | | | | $581.49 | Dec-15 | $ | 598.12 |
| | | | | $581.49 | Jan-16 | $ | 598.12 |
| | | | | $581.49 | Feb-16 | $ | 598.12 |

### Borrower Information

| | | | |
|---|---|---|---|
| Bk filed: | | 12/14/2012 | |
| Borrower Name: | ELIZABETH A PFLEGER | Less Debtor susp | $ (581.49) |
| Co-Borrrower Name: | | Total: | $ 14,637.73 |
| Property Address: | 3500 CORONADO DR | ALTON IL 62002 | |

Motion for relief requested:                    7/31/2015



PERSONAL INFORMATION REDACTED

# NOTE



February 22, 2008
[Date]

3500 CORONADO DR
Alton, IL  62002

[Property Address]

## 1.  PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means **Pulaski Bank**

and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
**Sixty Nine Thousand Five Hundred Twenty Seven and no/100**                                                    Dollars
(U.S. $ **69,527.00**                    ), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of    **Five and Seven Eighths**

percent (                    **5.8750** %) per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which  might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

(A)  Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **April 01, 2008**                    .  Any principal and interest remaining on the first day of             **March 2038** will be due on that date, which is called the "Maturity Date."

(B)  Place

Payment shall be made at **Pulaski Bank, 12300 Olive Blvd, St Louis, MO  63141**

or at such other place as Lender may designate in writing by notice to Borrower.

(C)  Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ **411.28**
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge          ☐ Graduated Payment Allonge

☐ Other [specify]

## 5.   BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.   BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four                                         percent (          **4.0000%**) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.   WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)
ELIZABETH A PFLEGER                -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____
       LAURIE MEDER
       SENIOR VICE PRESIDENT

PAY TO THE ORDER OF
COUNTRYWIDE BANK, FSB
Its Successors and/or Assigns
WITHOUT RECOURSE
PULASKI BANK

_____
HARRY A. BLANK
VICE PRESIDENT

ITEM 8432L3 (9808R)                    *(Page 3 of 3 pages)*          GREATLAND ■
                                                          To Order Call: 1-800-530-9393 □Fax 616-791-1131

Premier 8

PERSONAL INFORMATION REDACTED



This Instrument was prepared by:

Name:
Deborah Miller

Address:
Pulaski Bank
12300 Olive Blvd
St Louis, MO 63141

After Recording Return To:
Pulaski Bank
12300 Olive Blvd
St Louis, MO 63141

2008R09269

STATE OF ILLINOIS
MADISON COUNTY
FILED FOR RECORD IN
THE RECORDERS OFFICE

02/29/2008   01:39PM

DANIEL R. DONOHOO
RECORDER

REC FEE:     21.00
RHSPS FEE:   10.00
PAGES:       7

3.00

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **February 22, 2008**
The mortgagor is **ELIZABETH A PFLEGER, A SINGLE PERSON**

("Borrower"). This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Pulaski Bank**

under the laws of **the "United States of America"**
has an address of **12300 Olive Blvd, St Louis, MO 63141**

("Lender") is organized and existing
, and

Borrower owes Lender the principal sum of **Sixty Nine Thousand Five Hundred Twenty Seven and no/100**

Dollars (U.S. $ **69,527.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **March 01, 2038**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in Madison
County, Illinois:

LOT THIRTY-SEVEN IN BEILSMITH'S SUBDIVISION OF PART OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF SECTION EIGHT IN TOWNSHIP FIVE NORTH, RANGE 9 WEST OF THE THIRD PRINCIPAL MERIDIAN, AS SHOWN ON THE PLAT RECORDED IN THE RECORDER'S OFFICE OF MADISON COUNTY, ILLINOIS, IN PLAT BOOK 16 PAGE 76, SITUATED IN THE COUNTY OF MADISON, STATE OF ILLINOIS.

ILLINOIS FHA MORTGAGE

ITEM 9601IL1 (0205)—MERS

{Page 1 of 7 pages}

6/96

GREATLAND ®
To Order Call: 1-800-530-9363 ☐ Fax: 616-791-1131



REDACTED

which has the address of

3500 CORONADO DR
[Street]

| Alton | Illinois | 62002 | ("Property Address"); |
| [City] | | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

ILLINOIS FHA MORTGAGE

ITEM 9601L2 (0205)—MERS          *(Page 2 of 7 pages)*



GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131



4.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.    **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the

ILLINOIS FHA MORTGAGE

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



REDACTED

enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums

ILLINOIS FHA MORTGAGE

ITEM 9601L4 (0205)—MERS                    (Page 4 of 7 pages)



GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131


REDACTED

secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

ILLINOIS FHA MORTGAGE

ITEM 9601L5 (0205)—MERS            *(Page 5 of 7 pages)*



GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131
REDACTED

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

21. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider   ☐ Graduated Payment Rider   ☐ Growing Equity Rider

☐ Planned Unit Development Rider   ☐ Adjustable Rate Rider   ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider   ☐ Other [Specify]

ILLINOIS FHA MORTGAGE

ITEM 9601L6 (0205)—MERS          *(Page 6 of 7 pages)*          

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
ELIZABETH A PFLEGER            -Borrower                                                          -Borrower

_____ (Seal)                    _____ (Seal)
                              -Borrower                                                          -Borrower

_____ (Seal)                    _____ (Seal)
                              -Borrower                                                          -Borrower

Witness:                                                  Witness:

_____                         _____

State of Illinois
County of **Madison**

This instrument was acknowledged before me on **February 22, 2008**                    (date) by
**ELIZABETH A PFLEGER**

                                                                      (name[s] of person[s]).

"OFFICIAL SEAL"
Clyde R Kallal
Notary Public, State of Illinois
Commission Expires 7/6/2011

_____
                                                                              Notary Public

# END OF DOCUMENT

ILLINOIS FHA MORTGAGE

ITEM 9601L7 (0205)—MERS                    (Page 7 of 7 pages)

GREATLAND ®
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



PERSONAL INFORMATION REDACTED

*2012R03263 2*
2012R03263
STATE OF ILLINOIS
MADISON COUNTY
FILED FOR RECORD IN
THE RECORDERS OFFICE
01/24/2012      03:05PM
MATT RICE, RECORDER
REC FEE:       25.00
RHSPS FEE:      10.00

Recording Requested By:
Bank of America
Prepared By: Cecilia Rodriguez
866-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
3500 Coronado Dr
Alton, IL 62002-3137

REDACTED    The space for Recorder's use    35000/

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 451 7TH ST.SW #B-133, WASHINGTON DC 20410 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:        PULASKI BANK
Borrower(s):            ELIZABETH A PFLEGER, A SINGLE PERSON
Date of Mortgage: 2/22/2008      Original Loan Amount: $69,527.00
Recorded in Madison County, IL on 2/29/2008, book N/A, page N/A and instrument number 2008R09269
IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
1/18/12

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____

Talisha T. Wallace Assistant Secretary

State of California
County of Ventura

On JAN 1 8 2012 before me, _____ Markus Hicks _____, Notary Public, personally
appeared Tallsha T. Wallace _____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Public: _____ Markus Hicks _____          (Seal)
My Commission Expires: February 12, 2015

MARKUS HICKS
Commission # 1925373
Notary Public - California
Los Angeles County
My Comm. Expires Feb 12, 2015

# END OF DOCUMENT

PERSONAL INFORMATION REDACTED

8029078
Tx:4016336

**2014R06339**
STATE OF ILLINOIS
MADISON COUNTY
03/03/2014 10:04 AM
AMY M. MEYER, RECORDER
REC FEE: 25.00
CO STAMP FEE:
ST STAMP FEE:
FF FEE:
RHSPS FEE: 9.00
# OF PAGES: 2

**When Recorded Mail To:**
Financial Dimensions, Inc.
1400 Lebanon Church Road

APN #: 23-2-08-08-17-304-031
Prepared by: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407

**ASSIGNMENT OF MORTGAGE**
**ILLINOIS**

This **ASSIGNMENT OF MORTGAGE** from **BANK OF AMERICA, NATIONAL ASSOCIATION**, whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignor") to **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2** whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the County Recorder of **MADISON** County, State of **ILLINOIS**, as follows:

Mortgagor: ELIZABETH A. PFLEGER AKA ELIZABETH ANNE PFLEGER
Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR PULASKI BANK
Amount: $ 69,527.00
Document Date: FEBRUARY 22, 2008
Date Recorded: FEBRUARY 29, 2008
Document/Instrument/Entry Number: 2008R09269
PIN: 23-2-08-08-17-304-031
Property Address: 3500 CORONADO DR, ALTON, IL 62002
Property more fully described as:

LEGAL DESCRIPTION:
LOT THIRTY-SEVEN IN BEILSMITH'S SUBDIVISION OF PART OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF SECTION EIGHT IN TOWNSHIP FIVE NORTH, RANGE 9 WEST OF THE THIRD PRINCIPAL MERIDIAN, AS SHOWN ON THE PLAT RECORDED IN THE RECORDER'S OFFICE OF MADISON COUNTY, ILLINOIS, IN PLAT BOOK 16 PAGE 76, SITUATED IN THE COUNTY OF MADISON, STATE OF ILLINOIS.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage.

APN #: 23-2-08-17-304-031
Prepared by: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing, LLC.
5720 Premier Park Dr,
West Palm Beach, FL 33407

This Assignment is made without recourse, representation or warranty. IN WITNESS WHEREOF, the undersigned has executed this Assignment of Mortgage at Palm Beach, Florida, this 29TH day of OCTOBER, 2013

**BANK OF AMERICA, NATIONAL ASSOCIATION**
**BY IT'S ATTORNEY-IN-FACT**
**OCWEN LOAN SERVICING, LLC.**

BY: _____

NAME: _____ Joel Pires

TITLE: Contract Manager

STATE OF FLORIDA, COUNTY OF PALM BEACH    )SS.

The foregoing instrument was acknowledged before me this 29TH day of OCTOBER, 2013, by _____ Joel Pires _____, Contract Manager at OCWEN LOAN SERVICING, LLC. A Limited Liability Company, Attorney-in-Fact for **BANK OF AMERICA, NATIONAL ASSOCIATION**, on behalf of the company. He/She is personally known to me.



Notary Signature -                        Christopher Kelley

Notary Public State of Florida
Christopher Kelley
My Commission EE 861683
Expires 12/30/2016

# END OF DOCUMENT